**In re Stanley Howard RICH, Debtor.**

**Stanley Howard RICH, Plaintiff,**

v.

**UNITED STATES of America ex rel., INTERNAL REVENUE SERVICE, Defendant.**

Bankruptcy No. 93–02514–C.
Adv. No. 95–0219–C.

United States Bankruptcy Court,
N.D. Oklahoma.

July 11, 1996.

Mark A. Craige, Morrel, West, Saffa, Craige & Hicks, Inc., Tulsa, OK, for Debtor.

Virginia Navarrete Brooks, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, Wyn Dee Baker, Assistant U.S. Attorney, Northern Dist. of OK, Tulsa, OK, for U.S.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

This matter came on to be heard upon the Complaint for Declaratory Judgment filed herein by debtor and plaintiff, Stanley Howard Rich ("Debtor"), seeking a determination that his interest in a pension fund is not subject to the unfiled tax lien of the Internal Revenue Service ("IRS"). The Court held an evidentiary hearing on May 2, 1996 to determine whether the pension plan at issue is an ERISA[1] qualified plan. The parties agree that if the pension plan is ERISA qualified, it is excluded from the bankruptcy estate and Debtor's interest in the plan is subject to the lien of the IRS. Conversely, the parties agree that if the plan is not ERISA qualified, it is part of the bankruptcy estate under Section 541 of the Bankruptcy Code, has been properly allowed as exempt and is not subject to the unfiled tax lien of the IRS pursuant to 11 U.S.C. § 522(c)(1).

---

1. "ERISA" is the acronym which refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.

The Court, having heard the testimony of the witnesses, having read the briefs submitted by the parties, and now being fully advised in the premises, hereby finds as follows.

## STATEMENT OF FACTS

In 1978, Debtor founded S.H. Rich Financial, Inc. ("Rich Financial"), a California corporation which engaged in the business of financial planning. Debtor was the chief executive officer and the sole stockholder of Rich Financial. The corporation had several employees. Rich Financial created a pension plan (the "First Plan") and contributed substantial amounts of money to the plan. Participants of the First Plan included Debtor as well as other employees of Rich Financial. The First Plan was an ERISA qualified plan. In 1986, due to a downturn in business, all of the employees of Rich Financial except Debtor were discharged and their interests in the First Plan were distributed at that time. Debtor was the only remaining employee of Rich Financial. Debtor's interest in the First Plan was rolled into a new pension plan (the "Current Plan") in which he was the only participant. At this point, the Debtor was the sole stockholder and the sole employee of Rich Financial. The Current Plan was not ERISA qualified. No contributions to the Current Plan were made after 1986.

In 1992, Debtor and his close associate and friend, Joseph Kessler, considered merging Debtor's corporation with a partnership owned by Kessler called KMI.[2] In order to facilitate the merger, Debtor sold 55 percent of the stock in Rich Financial to Kessler for $200.00. The terms of the stock transfer[3] state that Kessler acquired control of Rich Financial and that Debtor became an employee of Rich Financial. However, Debtor's testimony at the hearing revealed that Debtor retained complete control over the management of the corporation and Kessler did not control Debtor's activities in any meaningful way. Debtor remained the sole participant in the Current Plan. Kessler became the nominal Trustee of the Current Plan. However, Debtor actually performed the bookkeeping required for the Current Plan.

Debtor filed for protection under Chapter 7 of the Bankruptcy Code on June 30, 1993. In his bankruptcy petition, Debtor listed his interest in the Current Plan as an asset and claimed the asset as exempt property. The IRS did not file an objection to Debtor's claim of exemption and the Current Plan was allowed as exempt property.

The IRS filed a claim against Debtor's estate in the amount of $424,267.07 on November 28, 1994. The IRS never filed a notice of a tax lien. Debtor was granted a discharge of all of his dischargeable debts on November 17, 1993. On December 12, 1994, Debtor and the IRS stipulated that Debtor's tax liabilities were dischargeable debts. The IRS filed a lawsuit in the United States District Court for the Central District of California in Los Angeles, Case No. CV 95–4197 on June 28, 1995 seeking to enforce its tax lien against the Debtor's interest in the Current Plan.

## CONCLUSIONS OF LAW

The issue before the Court is whether Debtor's interest in the Current Plan was included in the bankruptcy estate. If it was, then it was properly claimed and allowed as exempt and is not subject to the unfiled tax lien of the IRS. The Court has jurisdiction to hear this matter under 28 U.S.C. § 1334. Also, this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (B), (K), & (O).

When a debtor files a bankruptcy petition, all of the debtor's equitable and legal interest in property becomes property of the bankruptcy estate. *See* 11 U.S.C. § 541. However, a debtor's beneficial interest in property that is subject to a transfer restriction enforceable under "applicable nonbankruptcy law" is excluded from the

---

**2.** KMI was a partnership which sold airplane parts overseas. Rich Financial was to perform certain bookkeeping and financial services for KMI. Kessler was to be the majority stockholder of the corporation. KMI failed so the planned merger never occurred.

**3.** The document memorializing this transaction was admitted as Exhibit 43 at the evidentiary hearing held on May 2, 1996.

bankruptcy estate under 11 U.S.C. § 541(c)(2). The United States Supreme Court has held that ERISA statutes are included within the definition of "applicable nonbankruptcy law" and that a debtor's interest in an ERISA qualified pension plan is not included within the bankruptcy estate. *Patterson v. Shumate*, 504 U.S. 753, 757–58, 112 S.Ct. 2242, 2246–47, 119 L.Ed.2d 519 (1992).

Accordingly, if Debtor's Current Plan is ERISA qualified, it is excluded from the bankruptcy estate. Property excluded from the estate cannot be claimed or allowed as exempt property and would be subject to an unfiled tax lien.[4] However, if the Current Plan is not ERISA qualified, it is included in the estate and was properly claimed and allowed as exempt. As exempt property, the Current Plan would not be subject to an unfiled tax lien pursuant to § 522(c)(2)(B) of the Bankruptcy Code.[5] *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S.Ct. 1644, 1647, 118 L.Ed.2d 280 (1992). *See also* 31 O.S.1996, § 1(20).

Congress enacted Title I of ERISA to remedy the abuses that existed in the handling and management of welfare and pension plan assets held in trust for workers in a traditional employer-employee relationship. *Schwartz v. Gordon*, 761 F.2d 864, 868 (2d Cir.1985). ERISA protects employees' retirement funds held by their employers.

Many courts have addressed the issue of whether a specific pension plan is an ERISA plan. The United States Court of Appeals for the Ninth Circuit stated that "[t]he existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Harper v. American Chambers Life Ins. Co.*, 898 F.2d 1432, 1433 (9th Cir.1990) (*quoting Kanne v. Connecticut Gen. Life Ins.*, 867 F.2d 489, 492 (9th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989)).

A key element in determining whether the pension fund is an ERISA plan is the employment status of the plan participant. Courts have articulated a common-law test to determine whether a person qualifies as an "employee" under ERISA. *See Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 322, 112 S.Ct. 1344, 1347–48, 117 L.Ed.2d 581 (1992). Some of the factors to consider in determining whether a person is an employee are "the hiring party's right to control the manner and means by which the [work] is accomplished, ... the skill required; the source of the instrumentalities and tools; the location of the work; [and] the duration of the relationship between the parties." *Nationwide Mutual Ins. Co.*, 503 U.S. at 322, 112 S.Ct. at 1348. Since the common-law test contains "no shorthand formula or magic phrase that can be applied to find the answer ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *N.L.R.B. v. United Ins. Co. Of America*, 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968).

In the present case, Debtor was a substantial co-owner of Rich Financial.[6] The document memorializing the stock transfer stated that Kessler, the majority stockholder of Rich Financial, acquired complete control of Rich Financial. However, Debtor testified that he had control of the operation of the

---

4. Even though the debt of the IRS is dischargeable, if their tax lien is valid as against the pension plan it would survive the discharge and could be enforced *in rem* against the funds in the pension plan.

5. Section 522 of the Bankruptcy Code provides: Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case except—
   (1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;

(2) a debt secured by a lien that is—
   (A)(I) not avoided under subsection (f) or (g) of this section ...
   (B) a tax lien, notice of which is properly filed; ....

6. Prior to Debtor's sale of stock in Rich Financial to Kessler, Debtor was the sole shareholder of Rich Financial. As previously discussed, Debtor's sale of the stock to Kessler was part of a business plan that failed. Debtor sold 55 percent of Rich Financial to Kessler for the sum of only $200.00.

business as well as complete autonomy in the performance of his daily tasks. The factual circumstances surrounding Debtor's relationship with Rich Financial establish that Debtor was not an employee of Rich Financial in the traditional sense, but instead Debtor's status was that of a substantial co-owner of the corporation. Debtor is not a traditional employee, nor does he meet the common-law definition of an employee.

In deciding a similar issue, the United States Court of Appeals for the Ninth Circuit held that "a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA." *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 264 (9th Cir. 1991). *See also Schwartz v. Gordon*, 761 F.2d 864, 867–869 (2d Cir.1985), *Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178, 185 (6th Cir.1992), *cert. denied*, 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993).

■ Debtor is not an employee but a substantial co-owner of Rich Financial and the sole participant in the Current Plan. ERISA was enacted to protect employees not substantial co-owners of corporations. The Current Plan is not ERISA qualified; it became part of the bankruptcy estate and was properly claimed and allowed as exempt. Therefore, Debtor's interest in the Current Plan is not subject to the unfiled tax lien.

■ On February 11, 1994, Debtor filed a complaint to determine the dischargeability of his debt to the IRS. On December 13, 1994, Debtor and the IRS entered into a Joint Stipulation and Order Determining Dischargeability of Debt. This order provided that Debtor's income taxes due and owing for the years 1978 through 1981 were dischargeable. The IRS now contends that it was misled by Debtor in entering into this stipulation. The IRS states that Debtor on many occasions in his bankruptcy case and in the adversary proceedings represented that the Current Plan was an ERISA qualified plan and was subject to the IRS's unfiled tax lien. Because there was sufficient money in the Current Plan to pay the tax claim of the IRS, the IRS contends it stipulated to the dischargeability of its debt because dischargeability was irrelevant. The IRS now states that Debtor has changed his position in as-

serting that the Current Plan is not ERISA qualified to defeat the tax lien of the IRS. The IRS further contends that the doctrine of judicial estoppel prevents Debtor from adopting these inconsistent positions.

The Court has examined the case file, the stipulation in the adversary proceeding relating to the dischargeability of the IRS debt and the pleadings in the present adversary proceeding. This Court can find no instance where Debtor stated that the Current Plan was ERISA qualified. In fact, Debtor, on his bankruptcy schedules, listed his interest in the Current Plan as property of the estate and claimed it as exempt. This is an implied statement by Debtor that the Current Plan was not ERISA qualified. If the IRS wanted to object to the inclusion of the Current Plan in the bankruptcy estate or object to Debtor's claim of exemption, it should have done so within the thirty day period provided by Bankruptcy Rule 4003.

Additionally, even if the IRS could established that Debtor had taken inconsistent positions, the United States Court of Appeals for the Tenth Circuit rejected the doctrine of judicial estoppel. *See United States v. 49.01 Acres of Land, More or Less*, 802 F.2d 387, 390 (10th Cir.1986).

The Court will enter a separate judgement order consistent with this Memorandum Opinion.

**IT IS SO ORDERED.** .